UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

KEENAN JOHNSON,  :
           Petitioner,  :  Civ. No. 16-416 (RBK)
           v.  :
UNITED STATES OF AMERICA,  :  **OPINION**
           Respondent.  :

**ROBERT B. KUGLER, U.S.D.J.**

      Petitioner, Keenan Johnson, is a federal prisoner currently incarcerated at the Federal Correctional Institute at Allenwood, Pennsylvania. Petitioner, through counsel, filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, Petitioner's motion will be denied and a certificate of appealability shall not issue.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

      On October 3, 2014, Petitioner pled guilty to Conspiracy to Possess with Intent to Distribute Heroin, contrary to 21 U.S.C. §§ 841(a) and (b)(1)(B), in violation of 21 U.S.C. § 846. (*See* ECF No. 6 at 3.) Petitioner was sentenced on January 29, 2015 by the Honorable Joseph E. Irenas, U.S.D.J. (*See* ECF No. 4.) According to the Presentence Report prepared by the United States Probation Office, Petitioner qualified as a career offender within the meaning of § 4B1.1 of the United States Sentencing Guidelines ("Guidelines"). (*See id.* at 3.) Under § 4B1.1, a defendant is subject to punishment as a career offender if:

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

United States Sentencing Commission, Guidelines Manual § 4B1.1 (Nov. 2014) ("U.S.S.G.").[1]

At the time Petitioner was sentenced, the Guidelines defined a "crime of violence" as:

> (a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that –
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another [the "elements clause"], or
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, [the "enumerated offenses"] or otherwise involved conduct that presents a serious potential risk of physical injury to another [the "residual clause"].

U.S.S.G. § 4B1.2(a) (Nov. 1, 2014).

Petitioner was designated a career offender based upon his previous convictions in New Jersey for a controlled dangerous substance offense for possession of a controlled dangerous substance with intent to distribute within 1,000 feet of school property or bus, in violation of N.J. Stat. Ann. § 2C:35-7; and a crime of violence offense for terroristic threats, in violation of N.J. Stat. Ann. § 2C:12-3b. (*See* ECF No. 1 at 2.) At the time of sentencing, neither counsel objected to Petitioner's designation as a career offender. (*See generally* ECF No. 4.) As a result of this enhancement, the Presentence Report recommended that Petitioner receive a sentence between 188- and 235-months in prison, based upon an offense level of 31 and a criminal history category of VI. (*See id.* at 3.)[2]

At sentencing, Judge Irenas granted a downward variance pursuant to 18 U.S.C. § 3553(a) and set Petitioner's offense level at 28 and his criminal history category at V. (*See id.* at 26.) Petitioner's new guideline range was recommended to be between 130- and 162-months

---

[1] References in this opinion to the Guidelines are to the 2014 version that was in effect when Petitioner was sentenced. *See* 18 U.S.C. § 3553(a)(4)(A) (instructing courts to refer to the Guideline "in effect on the date the defendant is sentenced.")

[2] Absent the career offender enhancement, Petitioner's guideline range would have been 84 to 105 months based on an offense level of 23 and criminal history category of V. (*See* ECF No. 1 at 2.)

imprisonment. (*See id.*) Judge Irenas sentenced Petitioner to the low end of the range, ordering that he serve a term of 130 months in prison and upon his release, a term of five years supervised release. (*See id.*)

In January 2016, Petitioner filed the instant motion pursuant to 28 U.S.C. § 2255, arguing that in light of *Descamps v. United States*, 570 U.S. 254 (2013), and *Johnson v. United States*, 135 S. Ct. 2551 (2015), his conviction for terroristic threats was no longer a predicate offense for the career offender designation and that his sentence violated due process of law. (*See* ECF No. 1.) In March 2016, Respondent filed an answer in opposition. (*See* ECF No. 6.) Petitioner filed a traverse thereafter. (*See* ECF No. 7.)

In March 2017, Petitioner filed a motion for the court to grant him leave to amend his pending § 2255 motion. (*See* ECF No. 8.) Petitioner stated that the recent Supreme Court decision in *Beckles v. United States,* 137 S. Ct. 886 (2017), rendered his vagueness challenge to the Career Offender Guidelines moot. (*See id.* at 2.) Although Petitioner argued his claim under *Descamps* remained viable, he also stated that the claim could "no longer be framed as a vagueness challenge through the *Johnson* lens." (*Id.*) Rather, Petitioner argued that he should be permitted to amend his motion to frame his claim as one of "ineffective assistance of counsel." (*Id.*) Petitioner's motion to amend was denied on May 2, 2018. (*See* ECF No. 9; ECF No. 10.)

## II. LEGAL STANDARD

Under 28 U.S.C. § 2255, a motion to vacate, set aside or correct a sentence of a person in federal custody entitles a prisoner to relief if "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). When considering a § 2255 motion, a district

court " 'must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record.' " *United States v. Tolliver*, 800 F.3d 138, 141 (3d Cir. 2015) (quoting *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005)). Additionally, a district court must hold an evidentiary hearing on the motion if " 'the files and records do not show conclusively that [the movant] was not entitled to relief.' " *United States v. Tolliver*, 800 F.3d 138, 141 (3d Cir. 2015) (alteration in original) (quoting *Solis v. United States*, 252 F.3d 289, 294 (3d Cir. 2001)).

## III.  DISCUSSION

Petitioner's argument in the instant motion is twofold. Petitioner asserts that not only is his conviction for terroristic threats under N.J. Stat. Ann. § 2C:12-3b not a crime of violence under the Guidelines elements clause, but that it also does not qualify as a crime of violence under the Guidelines residual clause. (*See* ECF Nos. 1, 18.) The elements clause of § 4B1.2 states that an offense is a crime of violence if it "has as an element the use, attempted use, or threatened use of physical force against the person of another." *See* U.S.S.G. § 4B1.2(a)(a) (Nov. 1, 2014). The residual clause of § 4B1.2 states that an offense is considered a crime of violence if it "presents a potential risk of physical injury to another." *See* U.S.S.G. § 4B1.2(a)(2) (Nov. 1, 2014). Petitioner maintains that his since conviction for terroristic threats does fall under either of these clauses, he was improperly designated a career offender and he should be resentenced without that enhancement. (*See* ECF No. 18 at 10.)

### A.  Elements Clause of § 4B1.2

Petitioner first alleges that his prior offense for third-degree terroristic threats is not a predicate offense that qualifies him as a career offender under the elements clause of § 4B1.2(a)(1). (*See* ECF No. 4-8.) Specifically, Petitioner asserts that the United States Supreme Court decision in *Descamps* requires a finding that New Jersey's terroristic threats offense categorically fails to

4

qualify as a predicate offense under § 4B1.2(a)'s elements clause because the crime can be committed without the use, attempted use, or threatened use of physical force.[3]  (*See id.*)

In *Descamps*, the United States Supreme Court held that in order to determine whether a predicate offense qualifies as a crime of violence under § 4B1.2, courts must apply the "categorical approach." *See Descamps*, 133 S. Ct. at 257.  The categorical approach requires that sentencing courts "'look only to the statutory definitions'–i.e., the elements–of a defendant's prior offenses, and *not* 'to the particular facts underlying those convictions'" in determining whether the offense qualifies as a crime of violence. *See id.* at 261 (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990)).  In the context of § 4B1.2(a)'s elements clause, courts must ask "whether 'the use or threat of physical force [against the person of another]' is an element of the offense." *See United States v. Chapman,* 866 F.3d 129, 134 (3d Cir. 2017) (alterations in original) (quoting *United States v. Brown,* 765 F.3d 185, 189 (3d Cir. 2014)).  If the state statute under which defendant was convicted "sweeps more broadly" than § 4B1.2(a)'s elements clause, then a conviction under that state statute will not qualify as a predicate offense under the career offender enhancement. *See Brown*, 765 F.3d at 189 (citing *Descamps*, 133 S. Ct. at 2283).

---

[3] At the outset, it is important to note that Petitioner did not object to his classification as a career offender at sentencing. (*See* ECF No. 1 at 2.)  Generally, "[a] petitioner's failure to raise a particular error either at trial or on direct appeal generally precludes the assertion of that error for the first time in a collateral attack under Section 2255." *Kikumura v. United States*, 978 F. Supp. 563, 574 (D.N.J. 1997); *see also Oelsner v. United States*, 60 F. App'x 412, 414 (3d Cir. 2003) ("Procedural default bars a defendant from raising new claims in his § 2255 motion.")  The Supreme Court has held that a collateral attack under § 2255 is not a substitute for a direct appeal. *See Foster v. Chatman*, 136 S. Ct. 1737, 1758 (2016) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982).  If a § 2255 motion "rests on issues not raised at trial or on direct appeal, the petitioner bears the burden of demonstrating both 'cause' to excuse the procedural default and that 'actual prejudice' will result from the errors at issue." *Kikumura*, 978 F.Supp. at 574-75 (citing *Frady*, 456 U.S. at 167.)  However, " 'procedural default is an affirmative defense for' the government[,]" and when the government "fails to raise an affirmative defense in a timely manner, [the government] 'lose[s] the right to assert the defense thereafter.' " *Oelsner,* 60 F. App'x at 414 (quoting *Grey v. Netherland*, 518 U.S. 152, 165-66 (1996)).  Here, since the government failed to raise procedural default as an offense, this Court will not raise it *sua sponte*.

Here, Petitioner argues that his prior conviction under New Jersey's terroristic threats statute does sweep more broadly than § 4B1.2(a)'s elements clause because threatening to kill another person can be committed without the use, attempted use, or threatened use of physical force. (*See* ECF No. 1 at 5.) The New Jersey terroristic threats statute under which Petitioner was convicted, provides:

> A person is guilty of a crime of the third degree if he threatens to kill another with the purpose to put him in imminent fear of death under circumstances reasonably causing the victim to believe the immediacy of the threat and the likelihood that it will be carried out.

N.J. Stat. Ann. § 2C:12-3b.

To demonstrate his point that this offense may be committed without the use of physical force, Petitioner puts forth the following examples: "a defendant can place another in fear of death by threatening to *poison* that person, to expose that person to hazardous chemicals, to place a barrier in front of the person's car, to lock the person up in the car on a hot day, [or] to lock that person at an abandoned site without food or shelter." (*Id.* at 7 (emphasis in original).) In support of his claim, Petitioner cites to *United States v. Torres-Miguel*, 701 F.3d 165 (4th Cir. 2012) and *Chrzanoski v. Ashcroft*, 327 F.3d 188 (2d Cir. 2003). In *Torres-Miguel*, the Fourth Circuit held that a defendant's prior conviction for threatening to "commit a crime which *will result* in death or great bodily injury to another person, with the specific intent that the statement … is to be taken as a threat" was not a crime of violence under the elements clause of § 4B1.2(a). *See Torres-Miguel*, 701 F.3d at 167-69 (emphasis in original). The court reasoned that "an offense that results in physical injury, but does not involve the use or threatened use of force, simply does not meet the Guidelines definition of a crime of violence. Of course, a crime may result in death or serious injury without involving [the] use of physical force." *See id.* at 168. In *Chrzanoski*, the Second Circuit held that the defendant's prior conviction for a third degree assault did not constitute a

crime of violence under the elements clause of the Guidelines because "an individual could be convicted of intentional assault in the third degree for injury caused not by physical force, but by guile, deception, or even deliberate omission." *See Chrzanoski*, 327 F.3d at 195. Thus, both *Torres-Miguel* and *Chrzanoski* held that "a state offense must constitute a *use* or *threatened use* of violence force, not simply *result* in physical injury or death." *See Torres-Miguel*, 701 F.3d at 169 (emphasis in original).

However, as the Government points out, both *Torres-Miguel* and *Chrzanoski* have been abrogated by the United States Supreme Court decision in *United States v. Castleman*, 572 U.S. 157 (2014). (*See* ECF No. 17 at 8.) In *Castleman*, the petitioner argued that the use of force requires a direct application of that force. *See Castleman*, 572 U.S. at 170-71. Specifically, the petitioner asserted that, "no one would say that a poisoner 'employs' force or 'carries out a purpose by means of force' when he or she sprinkles poison in a victim's drink." *See id.* at 170-71. The Supreme Court rejected this argument, holding:

> The "use of force" in [the petitioner's] example is *not* the act of "sprinkl[ing]" the poison; *it is the act of employing poison knowingly as a device to cause physical harm*. That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter. Under [the petitioner]'s logic, after all, one could say that pulling the trigger on a gun is not a "use of force" because it is the bullet, not the trigger, that actually strikes the victim.

*Id.* at 170 (emphasis added). Accordingly, *Castleman* held that the use of force "encompasses even its indirect application." *See id.*

Since *Castleman* was decided, both the Fourth and Second Circuits have issued decisions noting the abrogation of *Torres-Miguel* and *Chrzanoski*. *See United States v. Middleton*, 883 F.3d 485, 491-92 (4th Cir. 2018) (acknowledging that *Castleman* abrogated part of *Torres-Miguel* and adopting the standard that a defendant may also cause injury indirectly through means such as

7

poisoning); *see also Barnegas Gomez v. Barr*, 922 F.2d 101, 108 (2d Cir. 2019) (holding that *Chrzanoski* "relied on an understanding of the use of force [which] has been abrogated by the Supreme Court's decision in *Castleman*" and stating that assault by means of poison encompasses the requisite force required by the Guidelines).

Significantly, the Third Circuit appears to have also adopted *Castleman's* reasoning in its recent case law. *See United States v. Chapman,* 866 F.3d 129 (3d Cir. 2017). In *Chapman*, the Third Circuit considered whether a conviction under the federal criminal threat statute, 18 U.S.C. § 876(c), which requires "knowingly mailing a communication containing a threat to injure the person of the addressee or another," fell within § 4B1.2's definition of "crime of violence." *See id.* at 136. Relying on the Supreme Court's decision in *Castleman*, the Third Circuit rejected the petitioner's argument that "[t]the threat of physically injuring a victim, even the threat of bodily injury or death, does not necessarily require a threat to use violent force against the person of the victim." *See id.* at 135. Rather, the Third Circuit held that "the 'use' of 'physical force,' as used in § 4B1.2(a)(1), involves the intentional employment of something capable of causing physical pain or injury to another person, regardless of whether the perpetrator struck the victim's body." *Id.* at 133. The Third Circuit stated simply that "indirect applications of harm" do not fall outside of the Guidelines' ambit. *See id.*

Although Petitioner here argues that *Castleman* should not apply because it was limited to the misdemeanor crimes of violence referenced in the case, the Third Circuit undermined that assertion in *Chapman*. *See Chapman*, 866 F.3d at 133. Specifically, the Third Circuit stated:

> [The petitioner] fails to sufficiently explain why *Castleman*'s analysis should not apply here. If employing a device to cause harm indirectly (*e.g.*, pulling the trigger on a gun) meets the definition of "physical force," as used in misdemeanor crime of violence, then it stands to reason that the same action meets the definition of "physical force," as used in felony crime of violence. Otherwise, §

8

> 4B1.1(a)(1) would only apply to offenses that explicitly require a punch, kick, or some other form of touching that is more than offensive. We therefore find that the "use" of "physical force," as used in § 4B1.2(a)(1), involves the intentional employment of something capable of causing physical pain or injury to another person, regardless of whether the perpetrator struck the victim's body.

*Id.*

The Third Circuit further expounded upon the use of force required under § 4B1.2 in its decision in *United States v. McCants*, 920 F.3d 169 (3d Cir. 2019). In *McCants*, the defendant argued, in part, that his conviction under New Jersey's robbery statute was not a predicate offense under § 4B1.2's elements clause. *See id.* at 180-81. The New Jersey robbery statute under which the defendant was convicted made it a crime to "threaten another with or purposely put him in fear of immediate bodily injury" while in the course of committing a theft. *See* N.J. Stat. Ann. § 2C:15-1(a)(2); *see also McCants*, 920 F.3d at 177. In explaining that Petitioner's conviction did qualify as a crime of violence under § 4B1.2(a)'s element's clause, the Third Circuit reasoned:

> Subsection (a)(2) of the robbery statute requires that the defendant "[t]hreaten[ ] another with or purposely put[ ] him in fear of immediate bodily injury." N.J. Stat. Ann. § 2C:15-1(a)(2). In New Jersey, "bodily injury" is defined as "physical pain, illness or any impairment of physical condition." *Id.* § 2C:11-1(a). Under both the Guidelines and New Jersey definitions, the defendant must place another in fear of physical pain or injury. *Because § 4B1.2(a)(1) does not mandate physical contact*, New Jersey's definition of "bodily injury" falls within the Guidelines' definition of "crime of violence." Accordingly, we hold that McCants's conviction under subsection (a)(2) qualifies as a crime of violence under the elements clause of § 4B1.2(a)(1) of the Guidelines.

*McCants*, 920 F.3d at 181 (emphasis added).

The ruling in *McCants* that "§ 4B1.2(a)(1) does not mandate physical contact" in order to place another in fear of physical pain or injury irreparably undermines Petitioner's argument in the instant case. While Petitioner here asserts that conduct such as threatening to poison another or threatening to withhold life-saving medication is not a direct use of force, the Third Circuit's ruling

9

in *McCants* held that such direct force is not required. *See id*. at 181. In *McCants*, the Court upheld that the defendant's conviction for threatening another with, or purposely putting him in fear of, immediate bodily injury while in the course of committing a theft was a crime of violence – an offense which is markedly similar to Petitioner's conviction for threatening to kill another with the purpose to put him in imminent fear of death.

Finally, this Court also notes that the Third Circuit has previously indicated that threatening to commit murder would, indeed, be considered a crime of violence under the Guidelines. *See United States v. Brown*, 765 F.3d 185, 193 (3d Cir. 2014). In *Brown*, the Third Circuit held that a Pennsylvania statute, 18 Pa. Cons. Stat. § 2706(a)(1), which prohibits threats to "commit any crime of violence with intent to terrorize another," included both conduct that involved physical force and conduct that did not. *See id.* at 192-93. The Third Circuit found that Pennsylvania's crime of violence definition included, among other crimes, arson – an offense that may be committed "regardless of whether a person is present." *See id.* at 192. The Third Circuit reasoned that arson did not necessarily have as an element "the use, attempted use, or threatened use of physical force." *See id.* (quoting U.S.S.G. § 4b1.2(a)(1)). The Third Circuit concluded, "[a] violation of § 2706(a)(1) thus *may sometimes be a 'crime of violence' as defined by the Guidelines (for example threatening to commit murder)* and sometimes not (for example, threatening to commit arson)." *See id.* at 193 (emphasis added).

Consequently, in light of the United States Supreme Court and Third Circuit case law rejecting the argument that physical force only requires the direct application of force, New Jersey's terroristic threats statute does not "sweep more broadly" than § 4B1.2(a)'s elements clause. Petitioner's conviction for threatening to kill another person categorically involves the

threatened use of physical force, even if that force occurs indirectly. *Castleman*, 572 U.S. at 170. Accordingly, Petitioner is not entitled to relief on this claim.

### B. Residual Clause of § 4B1.2

Even if Petitioner's conviction did not fall under § 4B1.2(a)'s elements clause, however, it would still be considered a crime of violence under § 4B1.2(a)'s residual clause. When Petitioner first brought his § 2255 motion, he filed it in the wake of the United States Supreme Court's decision in *Johnson.* (*See* ECF No. 1.) In *Johnson*, the Supreme Court held that the residual clause of the Armed Career Criminal Act ("ACCA"), which mirrored the Guideline's residual clause, was unconstitutionally vague.[4] *See Johnson*, 135 S. Ct. at 2557. Petitioner reasoned that since the residual clause of the ACCA was identical to that § 4B1.2(a), that the Guideline's residual clause must also be unconstitutionally vague. (*See* ECF No. 1 at 9.) During the pendency of Petitioner's motion, however, the Supreme Court issued its opinion in *Beckles v. United States,* 137 S. Ct. 886, 891-92 (2017). *Beckles* held that the residual clause of the Guidelines was "not subject to a vagueness challenge[,]" because unlike the ACCA which fixed the permissible range of sentences, the Guidelines were merely advisory and only "guide[d] the exercise of a court's discretion in choosing an appropriate sentence within the statutory range." *See id.* at 892.[5]

Given the Supreme Court's decision in *Beckles*, Petitioner's original claim is now without merit. Petitioner conceded this point in his motion to amend. (*See* ECF No. 8 at 1-2 ("Because

---

[4] The residual clause of the ACCA refers to the ACCA's definition of the term "violent felony." *Johnson*, 135 S. Ct. at 2556. Before *Johnson*, the ACCA defined a violent felony as, "any crime punishable by imprisonment for a term exceeding one year" that "otherwise involves conduct that presents a serious potential risk of physical injury to another." *See id*. at 2555-56.

[5] The Court's decision in *Beckles* limited its holding to only the advisory Guidelines. *See Beckles*, 137 S. Ct. at 890. Prior to the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), the United States Sentencing Guidelines had the "full force and effect of laws" and were "mandatory and binding on all judges." *See id.* at 233-34. After the Court's decision in *Booker* that the mandatory Guidelines violated the Sixth Amendment, the Court rendered the Guidelines merely "advisory." *See id.* at 245.

11

[Petitioner] was sentenced under the advisory Guidelines, his vagueness challenge to the Career Offender Guidelines must fail").) However, Petitioner maintains that his conviction still does not fall under the residual clause of § 4B1.2(a) because it does not categorically involve conduct that presents a serious potential risk of physical injury to another. (*See* ECF No. 18 at 7.) Specifically, Petitioner argues that the offense of terroristic threats may be committed "by threatening to withhold medicine or other life-saving care from an individual" and this type of passive conduct or "inaction" does not present a serious potential risk of physical injury. (*See* ECF No. 18 at 8.)

To determine whether an offense qualifies as a crime of violence under the residual clause, the offense must: "(1) present a serious potential risk of physical injury and (2) be 'roughly similar, in kind as well as degree of risk posed, to the examples [of burglary, arson, extortion, or use of explosives] themselves.'" *United States v. Johnson*, 587 F.3d 203, 207-08 (3d Cir. 2009) (quoting *United States v. Polk,* 577 F.3d 515, 518 (3d Cir. 2009)). In other words, "a crime of violence is one that categorically poses a serious risk of physical injury similar to the risks posed by one of the enumerated crimes in the residual clause." *See Hollins*, 514 F. App'x at 268. A crime is similar to one of the enumerated offenses if it "typically involve[s] purposeful, violent, and aggressive conduct." *See Begay*, 553 U.S. at 147.[6]

In determining whether Petitioner's conviction for terroristic threats qualifies as a crime of violence under § 4B1.2(a)'s residual clause, this Court first looks to the statutory text. Here, Petitioner was convicted under N.J. Stat. Ann. § 2C:12-3b, which provides:

> A person is guilty of a crime of the third degree if he threatens to kill another with the purpose to put him in imminent fear of death under circumstances reasonably causing the victim to believe the immediacy of the threat and the likelihood that it will be carried out.

---

[6] Although several of the cases discussed dealt with the ACCA, the Third Circuit has held that ACCA precedent generally applies to crimes of violence under the Guidelines. *See United States v. Steiner,* 847 F.3d 103, 118 (3d Cir. 2017).

N.J. Stat. Ann. § 2C:12-3b.

> The elements of this crime that must be proven beyond a reasonable doubt are:
>
> > (1) [the] defendant made a threat to kill another person; (2) the threat was made with the purpose to put the person in imminent fear of death under circumstances which reasonably caused the person to believe the threat was immediate; and (3) the threat was made under circumstances that reasonably caused the threatened person to believe it was likely to be carried out.

*State v. Tompkins*, No. A-0142-04T3, 2006 WL 1085711, at *5 (N.J. Super. Ct. App. Div. Apr. 26, 2006) (citing *State v. Smith*, 621 A.2d 493, 508 (N.J. Super. Ct. App. Div. 1992)).

Thus, the gravamen of § 2C:12-3b is that the threat to kill "be made under circumstances under which it carries the *serious promise of death*." *See State v. Dispoto*, 913 A.2d 791, 800 (N.J. 2007 (quoting *State v. Nolan,* 500 A.2d 1, 2 (N.J. Super. Ct. App. Div. 1985)) (emphasis added); *see also State v. Kaufman*, 288 A.2d 581, 582 (N.J. Super. Ct. App. Div. 1972) (holding that the threat to kill must "impart the expectation of bodily harm or death").

Although the Third Circuit does not appear to have addressed whether N.J. Stat. Ann. § 2C:12-3b is a crime of violence under the residual clause, Petitioner's case is similar to one decided by the United States District Court for the Western District of Pennsylvania. *See United States v. Pratt*, Crim. No. 06-77, 2011 WL 6749031 (W.D. Pa. Dec. 22, 2011), *certificate of appealability denied*, Civ. No. 12-1444 (3d Cir. Aug. 28, 2012) (holding that "jurists of reason would not debate that Pratt's conviction [for intimidation of witnesses or victims] constitutes a 'violent felony' within the meaning of [the ACCA's residual clause]"). In *Pratt*, the petitioner argued that his conviction for intimidation of witnesses was not valid under the residual clause of the ACCA. *See id.* at *7. The court rejected that claim, reasoning that the crime of intimidation of witnesses presented both a serious potential risk of injury and that it was similar in kind to the enumerated offenses.

13

> Here, the criminal information charging petitioner with intimidation of witnesses explicitly charges that petitioner "threatened to harm the victim and his family." This conduct, the court believes, creates a serious potential risk of physical injury to another to satisfy the first step of the *Begay* analysis.
>
> The court also finds that the second requirement—that the crime of intimidation of witnesses presents a degree of risk similar to that presented by the enumerated offenses and is similar in kind to those offenses-is satisfied. As discussed above, similarity is measured by considering whether the crime in question involves purposeful, violent and aggressive conduct. Making a threat to harm a victim and his family involves such purposeful and aggressive behavior.
>
> In addition, intimidation of witnesses is similar in kind to the enumerated crime of extortion. As the Supreme Court explained in *Begay*, extortion is " 'purposely' obtaining property of another through threat of, *e.g.*, inflicting bodily injury.' " *Begay*, 553 U.S. at 145. Both the intimidation of a witness through the threat to harm the victim or his family and extortion are premised upon the purposeful, violent and aggressive act of threatening harm to another person. Accordingly, the court finds that, post-*Begay*, petitioner's previous conviction for intimidation of witnesses still qualifies as a conviction for a "violent felony" within the meaning of the ACCA.

*See id.* at *8–9.

In the instant case, Petitioner's offense for threatening to kill another mirrors Pratt's conviction for "threaten[ing] to harm the victim and his family," which the court found to present a serious potential risk of physical injury. *See id.* at *8. Consequently, Petitioner's similar conduct also presents a serious potential risk of physical injury. Indeed, the very definition of the word "kill" means "[t]o end life; to cause *physical* death." *Kill*, *Black's Law Dictionary* (10th ed. 2014) (emphasis added). Petitioner's conduct is also similar to the enumerated crime of extortion because, like extortion and threatening to harm a witness, Petitioner's conduct is "premised upon the purposeful, violent and aggressive act of threatening harm to another person." *See Pratt*, 2011 WL 6749031, at *9. Thus, as the Government here argues, Petitioner's conviction for terroristic threats under N.J. Stat. Ann. § 2C:12-3b presents both a serious potential risk of physical injury

14

and is similar in kind to the enumerated offense of extortion so as to justify its inclusion as a crime of violence under § 4B1.2(a)'s residual clause. *See also United States v. Mohr*, 554 F.3d 604, 609-10 (5th Cir. 2009) (holding that defendant's conviction under South Carolina stalking statute for following or harassing the victim and "mak[ing] a credible threat with the intent to place [victim] in reasonable fear of great bodily injury" was a crime of violence under § 4B1.2(a)'s residual clause because "targeted words or conduct that are intended to cause and does cause a targeted person to reasonably fear death, assault, bodily injury, criminal sexual contact, kidnapping or property damage to him or his family" are outcomes that are "roughly analogous to the enumerated offenses set out in § 4B1.2.").

Accordingly, Petitioner's terroristic threats conviction under N.J. Stat. Ann. § 2C:12-3b also qualifies as a crime of violence under § 4B1.2(a)'s residual clause. Petitioner is not entitled to relief on this claim.

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 327 (2003); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because jurists of reason would not disagree with this Court's conclusion that Petitioner has failed to make a substantial showing of the denial of a constitutional right insomuch as Petitioner's claims are without merit, Petitioner's

habeas petition is inadequate to proceed further and therefore, a certificate of appealability shall not issue.

## V. CONCLUSION

For the reasons stated above, the Petitioner's habeas petition is **DENIED** and a certificate of appealability shall not issue.

DATED: June 7, 2019     s/Robert B. Kugler
ROBERT B. KUGLER
United States District Judge